IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO


| | |
|---|---|
| WACHOVIA TRUST COMPANY, et al, | ) |
|         Plaintiff, | ) Case No. CV04-625-S-EJL |
| vs. | ) MEMORANDUM ORDER |
| GIRISH J. AMIN and KOKILA G. AMIN, | ) |
|         Defendants. | ) |

Pending before the Court in the above-entitled matter is Defendant's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Defendant argues this Court is without personal jurisdiction over her as she has insufficient contacts with Idaho. Plaintiffs argue jurisdiction in Idaho is proper because Defendant purposely availed herself of the privileges of doing business in Idaho and jurisdiction over Defendant is reasonable.

Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Wachovia Trust Company and Wells Fargo Bank filed this suit as Owner Trustee and Indenture Trustee, respectively, of the ACLC Business Loan Receivables Trust 1999-2 (hereinafter "the Trust."). The Trust owns the loan at issue in this case. (Docket No. 1, p. 4). AMRESCO Commerical Finance, LLC (hereinafter "ACFI") is a Delaware limited liability company with its principal place of business in Boise, Idaho. ACFI originated the subject loan, which was subsequently assigned to the Trust. (Docket No. 1, p. 5). ACFI and the Trust executed

MEMORANDUM ORDER - Page 1
05ORDERS\WACHOVIA_PJ.WPD

a servicing agreement under which ACFI acts as Plaintiffs' agent with respect to all matters related to the loan.  Pursuant to the agreement, ACFI is authorized to maintain the present lawsuit on the Trust's behalf.  Id.

Defendant Kokila Amin and her husband Girish are North Dakota residents and are the sole shareholders, officers and directors of Kargo Corporation (hereinafter "Kargo"), each owning fifty percent of the issued and outstanding shares of the corporation.  (Docket No. 10, p. 3).  On or about July 8, 1999, Defendant signed and submitted a loan application to ACFI in Boise.  Throughout the application process, Defendant sent numerous documents to ACFI's office, including her personal financial information, and telephoned ACFI in connection with the loan.  Additionally, Defendant and her husband authorized third parties to send relevant documents to ACFI.  During this time, ACFI negotiated, underwrote, processed and documented the loan from its Boise office.  (Docket No. 10, p. 4).  These actions and contacts eventually resulted in ACFI lending Kargo $1,358,333.33 on September 28, 1999.  Id.

In connection with, and as inducements for, the loan's closing, Defendant and her husband executed a promissory note on behalf of Kargo in the face amount of $1,358,333.33.  Additionally, Defendant and her husband executed a Pledge and Security Agreement, Indemnity, Deed of Trust, and an Assignment of Leases and Rents and Security Agreement (collectively, "loan documents").  Finally, Defendant and her husband executed an Affiliate Guaranty (hereinafter "the guaranty") which provides that Kokila and Girish would, personally, individually and jointly and severally guaranty the loan.  (Docket No. 10, p. 4-5).  This guaranty obligated Defendant to ACFI for the duration of the loan in the event of default.  (Docket. 10, p. 5).  Both the Pledge and Security Agreement and the Guaranty provide Idaho choice-of-law provisions maintaining that each would be construed, applied, enforced and governed under Idaho law.  (Docket No. 10, p. 6-7).  All closing documents, including the guaranty, were received and signed in Defendant's attorney's office in North Carolina.  (Docket No. 8-2, p. 2).

Kargo failed to maintain the scheduled monthly payments on the loan and such default triggered the promissory note's acceleration clause.  ACFI notified Kargo and Defendant of the breach and demanded payment under the terms of the guaranty.  Defendant responded with attempts

MEMORANDUM ORDER - Page 2

to restructure the loan, which were ultimately unsuccessful.  As of November 11, 2004, the loan is in default for the amount of $1,790,212.13.  (Docket No. 10, p. 7).  On December 15, 2004, Plaintiffs filed suit against Defendant, in her individual capacity, for breach of the guaranty.  Defendant filed the instant motion to dismiss for lack of personal jurisdiction which alleges: 1) she has not "transacted business" in the state of Idaho within the state long-arm statute's definition; and 2) she lacks sufficient contacts with the state to establish "minimum contacts" to establish specific jurisdiction.  Plaintiffs contend: 1) Defendant transacted business within the state by virtue of the circumstances surrounding the procurement of the loan and 2) Defendant's actions with respect to the loan are sufficient to establish "minimum contacts" with the state.

## BURDEN OF PROOF

In a 12(b)(2) motion to dismiss the Plaintiff need only make a prima facie showing of facts supporting jurisdiction through its pleadings and affidavits to avoid dismissal.  Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1119 (9th Cir. 2002) (citing Myers v. Bennett Law Offices, 238 F.3d 1068, 1071 (9th Cir. 2001)).  The Court accepts as true Plaintiff's uncontroverted allegations, and resolve in its favor factual conflicts contained in the parties' filings.  Id. (citing AT & T Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996)).

## DISCUSSION

Personal jurisdiction over both parties is required before a court may decide a case in controversy.  U.S. CONST. Amend. XIV.  In order to exercise personal jurisdiction, the State long-arm statute must be met.  See State of Idaho v. M.A. Hanna Co., 819 F. Supp. 1464 (D. Idaho 1993).  In adopting Idaho Code § 5-514, the Idaho Legislature intended to exercise all the jurisdiction available to the State of Idaho under the due process clause of the United States Constitution.  Houghland Farms, Inc. v. Johnson, 803 P.2d 978, 981 (Idaho 1990); see also Lake v. Lake, 817 F.2d 1416 (9th Cir. 1987) (determining federal cases provide guidance in determining whether personal jurisdiction exists).

I.      Idaho's Long-Arm Statute

In order for an Idaho court to exert jurisdiction over an out-of-court defendant, the acts giving rise to the litigation must fall within the scope of the state's long-arm statute.  Mann v.

MEMORANDUM ORDER - Page 3
05ORDERS\WACHOVIA_PJ.WPD

<u>Coonrod</u>, 870 P.2d 1316, 1318 (Idaho 1994) (citing <u>Saint Alphonsus v. Washington,</u> 123 Idaho 739,742 (Idaho 1993)).  The long-arm statute, Idaho Code §5-514(a), provides, in pertinent part:

> Any person, firm, company, association or corporation, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated thereby submits said person, firm, company, association or corporation, and if any individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any said acts;
>
> (a) The transaction of any business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish, transact or enhance business purpose or objective or any part thereof of such person, firm, company, association or corporation.

Defendant argues she is not subject to this Court's jurisdiction because she has not "transacted business" within the meaning of Idaho Code §5-514(a).  Specifically, Defendant maintains that the jurisdiction issue should be limited to an examination of the isolated act of signing the personal guaranty, in her individual capacity, rather than the circumstances surrounding the entire loan transaction involving her actions as an agent of Kargo.

Defendant relies on the Idaho Supreme Court decision <u>Mann v. Coonrad</u> for her contention that only the guaranty signed in her individual capacity should be considered for jurisdiction purposes and that such activity is not "transacting business" within the meaning of Idaho's long-arm statute.  In that case, the defendant, a Minnesota resident and Utah corporation shareholder, personally guaranteed payment of an obligation his company owed to an Idaho resident, the plaintiff. <u>Mann v. Coonrad</u>, 870 P.2d 1316, 1317 (Idaho 1994).  The telephone call during which this statement was made was the defendant's only contact with Idaho and was initiated by the corporation's other shareholder located in Utah. <u>Id.</u> at 1319.  The Court held such contact was insufficient to subject the defendant to an Idaho court's jurisdiction: "We cannot say [the defendant] transacted business in Idaho based upon a telephone call which he did not even initiate.  Likewise, we cannot say [the defendant] transacted business in Idaho due to the mere fact that [the plaintiff] is located in Idaho." <u>Id.</u>

Defendant's activities in the instant case, however, are more substantive than a single telephone call.  Defendant sent numerous documents and other required information to ACFI's Idaho office in the course of several months, including her personal financial information, in order

MEMORANDUM ORDER - Page 4
05ORDERS\WACHOVIA_PJ.WPD

to secure the loan.  Furthermore, whereas the defendant in <u>Mann</u> did not initiate the contact which gave rise to his guarantee, Defendant in this case not only initiated the contact with ACFI by submitting the loan application, but also continued to communicate with the Idaho corporation during the negotiation process and signed several loan documents, including the personal guaranty, containing Idaho choice-of-law provisions.  All of these documents were sent to the Boise office and all ACFI's duties regarding the loan process were executed from that office.

Idaho courts have held similar actions and contacts to be transacting business within the meaning of I.C. §5-514(a).  <u>Western States Equipment Company v. American Amex, Inc.</u>, 868 P.2d 483 (Idaho 1994); <u>Ponderosa Paint Manufacturing, Inc. v. Yack</u>, 870 P.2d 663 (Idaho App. 1994). In <u>Western States</u>, the non-resident defendant submitted a credit application to the plaintiff's Idaho office.  Thereafter, the parties engaged in telephone negotiations concerning the leasing of the subject equipment.  <u>Western States</u>, 868 P.2d at 485-86.  The court held that such negotiation, along with the credit application sent to Western's Idaho office, constituted the transaction of business in Idaho.  <u>Id.</u> at 486.

The signing and submission of the loan documents and personal guaranty, continued negotiations and communication between Defendant and ACFI are comparable to the credit application and negotiations in <u>Western States</u>.  These activities were undertaken for the purpose of realizing pecuniary benefit, as they culminated in Plaintiffs lending $1,358,333.33 to Defendant's business.  Moreover, Defendant's actions in regard to the loan transaction as a whole, as well as her single act of signing the personal guarantee in her individual capacity, illustrate Defendant's attempt to accomplish, transact or enhance a business purpose or objective, as the entire transaction was undertaken to provide her business with funds.   Therefore, Defendant was "transacting business" within the meaning of Idaho's long-arm statute.

The single act of signing the guaranty in her attorney's office in North Carolina, Defendant contends, does not constitute transacting business in the state of Idaho.  In making personal jurisdiction decisions, however, courts should employ a "highly realistic" approach and take into account "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." <u>Mellon Bank (East) PSFS, National Association</u>

MEMORANDUM ORDER - Page 5

v. Farino, 960 F.2d 1217 (3rd Cir. 1992) (citing Burger King Corporation v. Rudzewicz, 471 U.S. 462, 479 (1985)).  Having examined all of Defendant's conduct relating to the transaction at issue, this Court finds it unrealistic to ignore Defendant's actions in seeking out the loan on behalf of Kargo and only consider her actions to personally guarantee the loan. Before ruling on the motion to dismiss, however, this court must consider whether its exercise of personal jurisdiction over Defendant would violate the "minimum contacts" requirement of the due process clause of the Fourteenth Amendment.  Western States, 868 P.2d at 486 (citing Saint Alphonsus, 852 P.2d at 494-96).

II.    Due Process: Specific Jurisdiction

When a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising "specific jurisdiction" over the defendant.  Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 n. 8 (1984). Specific jurisdiction exists if a defendant has sufficient "minimum contacts" with the forum such that exercise of jurisdiction would not "offend the traditional notions of fair play and substantial justice."  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  In the Ninth Circuit, three conditions must be met in order to establish "minimum contacts": (1) the nonresident defendant must purposely direct its activities or consummate some transaction with the forum or a resident thereof, or perform some act by which it purposefully avails itself of the privilege of conducting activities within the forum; (2) the claim must arise or result from forum-related activities; and (3) the exercise of jurisdiction must be reasonable.  Yahoo! Inc. v. La Ligue Le Racisme, 379 F.3d 1120, 1123 (9th Cir. 2004.)

Defendant argues that the isolated act of signing the guaranty does not establish minimum contacts such that she purposefully availed herself of the privileges of conducting activities in Idaho, or invoked the benefits and protections of Idaho law.  Plaintiffs maintain that Defendant's actions in connection with the loan transaction as a whole satisfy the "minimum contacts" requirement.

A.    The nonresident defendant must purposefully conduct activities within the forum:

The requirement that the defendant do some act purposefully to avail itself of the laws of the forum state ensures that a person is not hauled into court as the result of random, fortuitous, or

MEMORANDUM ORDER - Page 6

attenuated contacts or on account of the unilateral activity of third parties. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985). Thus, the Court must examine whether Defendant's activities were directed purposefully toward the forum. <u>Id.</u> at 476. Purposeful availment requires a finding that the defendant performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state. <u>Doe v. Unocal Corp.</u>, 248 F.3d 915, 923 (9th Cir. 2001).

Parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in that other state for the consequences of their activities. <u>Burger King</u>, 417 U.S. at 473. Creating such "continuing obligations" between oneself and residents of the forum state, manifestly avails oneself of the privilege of conducting business there. <u>Id</u> at 475-76. Moreover, an agreement that specifically provides that the forum-state's law governs it directly invokes the benefits and protections of the forum-state's laws. <u>Gates Learjet Corp., v. Jensen</u>, 743 F.2d 1325, 1331 (9th Cir. 1984); <u>see also Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834 (9th Cir. 1986) ("Making the forum-state's law the governing law under the contract meets the purposeful availing test.").

Defendant's contacts with Idaho originated in her sending the loan application to ACFL's Idaho office and continued throughout the negotiation process by way of communication with and submitting required documents to that office. In this way, Defendant reached out beyond North Carolina and created continuing obligations with an Idaho citizen and, in the process, purposefully availed herself of the privileges of conducting business here. Also, several loan documents, including the guaranty, signed by Defendant contained Idaho choice-of-law provisions maintaining that each would be construed, applied, enforced and governed under Idaho law. By agreeing to such provisions, Defendant purposefully availed herself of the benefits of Idaho law.

B.   <u>The claim must arise out of or result from Defendant's forum-related activities:</u>

The plaintiffs' claims must arise out of the defendant's forum-related activities. In making this determination, the Ninth Circuit has adopted a "but for" analysis. <u>See</u> <u>Ballard v. Savage</u>, 65

MEMORANDUM ORDER - Page 7
05ORDERS\WACHOVIA_PJ.WPD

F.3d 1495, 1500 (9th Cir. 1995) (citing <u>Shute v. Carnival Cruise Lines</u>, 897 F.2d 377, 381 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991)).

In this case, Plaintiffs' claims regarding the validity and enforceability of the guaranty would not have arisen but for Defendant's Idaho-related actions. Defendant sought out an Idaho lender to secure the loan. Indeed, Defendant signed the guaranty as an inducement for ACFL to make the loan to Kargo, and the loan process was initiated and continued through Defendant's contact with the Idaho resident. Thus, it is Defendant's contacts with Idaho which give rise to this action.

C.    <u>The exercise of jurisdiction must be reasonable:</u>

Once the Court decides a defendant has sufficient minimum contacts with the forum-state, it is presumptively reasonable to require that defendant to submit to the burdens of litigation in that forum as well. <u>Burger King</u>, 417 U.S. at 476. Defendant must present a "compelling case" to rebut this presumption. <u>Id.</u> at 477. To determine whether the exercise of jurisdiction is reasonable, the Court looks at seven factors: the extent of defendant's purposeful injection into the forum state's affairs; the burden on the defendant in defending in the forum; the extent of conflict with sovereignty of the defendant's state; the interest of the forum state; the most efficient judicial resolution of the controversy; the importance of the forum to the plaintiff's interest in convenient and effective relief; and the availability of an alternative forum. <u>Dole Food Co. v. Watts</u>, 303 F.3d 1104, 1114 (9th Cir 2002). It is well established that in determining personal jurisdiction the court must focus primarily on "the relationship among the defendant, the forum, and the litigation." <u>Shaffer v. Heitner</u>, 433 U.S. 186, 204 (1977).

In having to defend this suit in Idaho, Defendant will bear the cost of transportation and legal services, and such travel during Kargo's Chapter 11 reorganization will undoubtedly be inconvenient. These concerns, however, while not insignificant, do not overcome the above-stated presumption such that hearing the case against Defendant in Idaho would be a violation of due process. As indicated above, Defendant purposefully injected herself into Idaho's jurisdiction by initiating the loan and maintained her connection to Idaho by continually communicating and transacting business with an Idaho resident. The instant suit is not likely to conflict with North

MEMORANDUM ORDER - Page 8

Carolina's sovereignty, as it involves a simple breach of contract claim, while Idaho has a strong interest in providing effective redress for its corporate residents. Efficiency also dictates the litigation be held in Idaho, as all of the loan processing took place in, and all of Defendant's pertinent information was sent to, Idaho. Thus, most of the relevant evidence and witnesses are located here. Finally, Plaintiffs' interest in convenient and effective relief will best be served in Idaho, as this is where the alleged harm to Plaintiffs occurred, which is a result of Defendant's actions. Thus, the <u>Dole</u> factors weigh in favor of this court exercising jurisdiction over Defendant.

## ORDER

Based on the foregoing, and being fully advised in the premises, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (Docket No. 8) is DENIED.

DATED:  **July 7, 2005**

Honorable Edward J. Lodge
U. S. District Judge

MEMORANDUM ORDER - Page 9
05ORDERS\WACHOVIA_PJ.WPD